**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JIANHU YI and QUIJU JIA<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>GTV Media Group Inc., a Delaware corporation, Saraca Media Group Inc., a Delaware corporation, Wengui Guo,<br><br>　　　　　　Defendants. | No.<br><br>COMPLAINT FOR<br>1. Violation of Sections 5(a) and 5(c) and 12(a)(1) of the Securities Act (Sale of Unregistered Securities)<br>2. Violation of Section 15 of the Securities Act (Control Person Liability)<br>3. Violation of Section 15(a) of the Exchange Act (Non-Registration as Broker Dealer) |

**I. NATURE OF THE ACTION**

1.　　This suit seeks the return of $210,000, together with statutory interest and attorneys' fees, which Defendants GTV Media Group Inc. ("GTV"), Saraca Media Group Inc. ("SMG") and Wengui Guo ("Guo"), procured from Plaintiffs Jianhu Yi and Quiju Jia ("Yi and Jia"), husband and wife, through the sale of unregistered securities in violation of the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.　　The Securities Act forbids the sale of unregistered securities and allows purchasers of unregistered securities to assert joint and several liability against anyone whose acts were substantial contributing factors in the sales transaction.

3.　　The Securities Act requires the seller to return the purchase price of the unregistered securities plus any interest.

1

4.      The Exchange Act generally makes it unlawful for any broker or dealer to use the mails (or any other means of interstate commerce, such as the telephone, facsimiles, or the Internet) to "effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security" unless that broker or dealer is registered with the Commission in accordance with Section 15(b) of the Act.

5.      Defendant Guo caused the establishment of GTV Media Group Inc. ("GTV") on April 17, 2020. Shortly after establishing GTV, Guo (and GTV, SMG and affiliates) began to solicit investors to invest in GTV by purchasing the company stock (the "Stock Offering").

6.      The securities were neither registered as required under the Securities Act nor subject to any exemption from registration, as the GTV stock was clearly "an investment of money in a common enterprise with profits to come solely from the efforts of a promoter or third party" (excerpt from [SEC v. Howey Co., 328 U.S. 293 (1946))](#).

7.      Neither Defendants Guo, GTV, SMG, nor any associated persons or affiliates were registered as brokers or dealers under the Exchange Act or exempt from such registration.

8.      Defendants Guo, GTV, SMG and associated persons or affiliates also began to solicit investors to invest in a virtual currency or digital asset called G Coins (the "G Coins Security Offering"). The G Coins investment was also a security under the Securities Act as an investment contract that is "an investment of money in a common enterprise with the expectation of profits derived solely from the efforts of a promoter or a third party" (Howey test).

9.      The G Coins Security Offering also was not registered pursuant to the Securities Act and Defendants operated as a broker or dealer or exchange without registering as such pursuant to the Exchange Act and without getting government approval for the offer or sale of G Coins.

10. GTV as seller, and the remaining Defendants, as persons who substantially participated in and contributed to the conduct of the Offerings, violated the Securities Act and Exchange Act through their offer and sale of unregistered securities.

11. After being solicited by Defendant Guo, Plaintiff Yi signed a Subscription Agreement for the GTV stock in May 2020 and Plaintiffs Yi and Jia wired $180,000 USD to Saraca Media Group Inc., the parent company of GTV and designated recipient of investment funds "(SMG") -- $100,000 and another $40,000 both on May 12, 2020, and an additional $40,000 on May 20, 2020. Pursuant to instructions, the monies were made payable to SMG and wired to SMG's account at JP Morgan Chase Bank.

12. Per instructions, Plaintiffs Yi and Jia wired $30,000 USD for G Dollars to GTV in three installments--$9,000 on May 12, 2020 to GTV's account at Capital One Bank, as well as $20,500 on May 27, 2020 and another $500 also on May 27, 2020 both to GTV's account at JP Morgan Chase Bank.

13. Accordingly, as set forth in greater detail below, each of the Defendants is jointly and severally liable for $210,000, together with 8% interest dating from May 2020, and attorneys' fees.

## II. JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over the claims pursuant to 28 U.S.C. § 1331 because Plaintiffs assert claims under the Securities Act and the Exchange Act.

15. This Court has personal jurisdiction over the Corporate Defendants because the corporate entities reside in this state by virtue of each maintaining its principal place of business in this state.

16. This Court has personal jurisdiction over Defendant Guo because he resides in this state.

17. The court additionally has personal jurisdiction over all Defendants because each Defendant purposely availed themselves of the privilege of conducting business in New York.

18. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because the corporate Defendants maintain operations and principal places of businesses in this state and judicial district. Furthermore, the individual Defendant resides in this state and judicial district. Finally, certain of the transactions, acts, practices, and courses of conduct constituting the violations alleged herein occurred within this district. '

### III. PARTIES

19. Plaintiffs Yi and Jia are husband and wife and Chinese citizens residing in China, who were solicited by and invested $210,000 with defendants as described herein.

20. Defendant GTV Media Group Inc. ("GTV") is a Delaware corporation with its principal place of business in New York.

21. Defendant Saraca Media Group Inc. ("SMG") is a Delaware corporation with a principal place of business in New York and is the parent company of GTV.

22. Upon information and belief, Plaintiff alleges Defendant Wengui Guo, a/k/a Wengue Guo, Miles Guo, Miles Kwok, Guo Wen Gui, and Guo Hauyun, is and at all times mentioned herein a foreign national residing in the State of New York. Defendant Guo controls SMG and GTV.

### IV. FACTS

23. GTV is the brainchild of Defendant Guo, a self-described billionaire political dissident from China with a large number of social media followers in the U.S. and elsewhere. Guo operates, and controls assets and bank accounts through a large number of corporate entities, including ones located in the British Virgin Islands, the Cayman Islands, Puerto Rico, and elsewhere.

24. Guo conceived GTV to be a Tik-Tok like video streaming social-media platform for user-generated political content.

25. On April 9, 2020, Guo began promoting an investment in GTV. From the outset as part of his marketing efforts, he sought to enhance the credibility of the new GTV venture by prominent displays of his personal wealth and his connections to the American political establishment, such as by photos of him on his multimillion-dollar yacht in the company of prominent political figures such as former close Trump aide Steve Bannon and Trump attorney Rudy Guiliani, and by joining the Mar-a-Lago country club owned by then-President Donald Trump.

26. On that April 9, 2020, Guo posted a video to YouTube in which he touted GTV as an investment. YouTube has since removed that video for violating its community guidelines.

27. On April 17, 2020, Guo caused GTV to be incorporated in Delaware.

28. On April 20, 2020, Guo recorded and disseminated via the internet a video giving instructions to potential private placement investors on how to invest in GTV.

29. In the video, Guo identified several individuals who would purportedly be directors of the company.

30. Guo also claimed the video was limited to private investors and not the public. However, this video was uploaded to YouTube by Guo the next day, with no restrictions on who would access and view it.

31. Along with the video, Guo posted a link to download investment documents, including a subscription agreement, a non-disclosure agreement, a set of "Investment Procedure Guidelines" with instructions on how to invest, and other investment related documents.

32. The YouTube video has been viewed over 2500 times since it was posted.

33. Between April 11, 2020 and May 9, 2020, Guo made numerous recorded video presentations touting the GTV investment and soliciting investments. Guo also touted a form of cryptocurrency that would be associated with GTV: "G-Coin," which investors would purportedly receive and which, according to Guo, would become highly valuable.

34. After being solicited by Guo in early May 2020, Plaintiff Yi signed a Subscription Agreement to invest as a private placement investor in GTV. Defendants never returned a counter-signed Subscription Agreement to plaintiffs.

35. On information and belief, Defendants sold some $300,000,000 of GTV shares to at least 300 investors and also sold G Coins to a large number of investors, and many of the investors in both securities were, like Plaintiffs, non-accredited investors.

36. On May 12, 2020, Plaintiffs wired $100,000 USD and another $40,000 USD to SMG, the designated recipient of investment funds for investments in GTV, as designated by Defendant Guo in his public solicitations. Later, on May 5, 2020, Plaintiffs wired an additional $40,000 to SMG for GTV shares, representing a total of $180,000 USD.

37. Additionally, on May 12, 2020, Plaintiffs wired $9,000 USD to GTV's bank account, as they were instructed by Guo's Investment Committee, for G Coins. Later, on May 27,

2020, Plaintiffs wired an additional $20,500 USD and $500 USD to GTV's bank account, also for G Coins, representing a total investment in G Coins of $30,000 USD. Plaintiffs were never provided with any document evidencing their ownership of $30,000 of G Coins, any instructions or guidance for how to access or use the G coins, or any information as to the actual value of the G Coins.

38.   Neither Plaintiff Yi nor Plaintiff Jia qualified as an accredited investor for Defendants' stock and G Coins securities offerings. Defendants did not take reasonable steps to verify whether they were or were not accredited investors as required by the federal securities laws.

39.   On May 13, 2020, GNews, a website connected to GTV that is under Guo's control, published an article encouraging readers to invest in GTV. The article stated in Chinese: "The current financing stage of GTV is the earliest stage and the stage with the highest return. The investment risk corresponding to this stage is of course the largest theoretically, but the GTV fundraise is actually a risk-free act of gifting money [to investors]."

40.   The last line of the article, in bold, stated in Chinese: "Mr. Wengui [Guo] let his comrades invest in GTV and buy G coins, which is a reward for the sacrifices and contributions made by all the comrades who broke the news of the revolution. There is no business risk, you just have to believe in it."

41.   After requesting physical share certificates representing Plaintiffs' GTV stock investments and paying additional fees for the privilege, Plaintiff Yi eventually received three GTV Media, Inc. stock certificates, nos. 1328, 1329, and 1330 each for 60,000 shares, all issued in his name, on July 29, 2020.

42. On June 2, 2020, Guo announced in a publicly posted video that the "private placement" had ended with him successfully raising hundreds of millions of dollars. He claimed that GTV is currently valued at *$2 billion*.

43. However, despite claiming on June 2, 2020 that the private placement was over, Guo continued to solicit investments, throughout June and July 2020, including through at least one more YouTube video and an article on his website, Gnews.org.

44. The offerings of GTV securities -- GTV stock and G Coins -- were not registered as required under the Securities Act and the Exchange Act, and did not qualify for any exemption from registration.

45. Typically, private placement securities issuers file Form D filings with the US Securities and Exchange Commission ("SEC") claiming that their private placement sale was exempt from registration because it would comply with the restrictions in 17 C.F.R. § 203.506 ("Rule 506").

46. On information and belief, Defendants knowingly offered and sold, or were willfully blind to the fact that they offered and sold, the securities in violation of the restrictions set forth under Rule 506.

47. An issuer may rely on the Rule 506(b) safe harbor under the Securities Act and/or Section 4(a)(2) only if it does not use general solicitation. As the above discussion illustrates, Defendants knowingly offered and sold, or were willfully blind to the fact that they offered and sold, the securities in the GTV Offerings through a general solicitation and furthermore, used general advertising to solicit investors and conduct the sale. They were therefore not entitled to rely on Rule 506(b).

48. That leaves Defendants with Rule 506(c) as the only potential exemption they might invoke.

49. Issuers who wish to rely on the Rule 506(c) exemption may engage in general solicitation "provided that the sales are limited to accredited investors and an issuer takes reasonable steps to verify that all purchasers of the securities are accredited investors."

50. Defendants did not take reasonable steps to verify that purchasers of the GTV securities were accredited investors and sold securities to unaccredited investors, including. Plaintiffs.

51. In one cogent illustration of this violation of Rule 506(c), Defendants' "investment procedure guidelines," which were published along with Guo's April 20, 2020 YouTube video, stated, "6. concerning whether investors qualify as 'qualified investors,' investors are requested to make their own judgments, do not send information or inquires to us. We cannot make any judgments."

52. In short, Defendants' offering of GTV stock and G Coin securities were not exempt from registration.

## V. CAUSES OF ACTION

### Count I: Violation Of Sections 5 And 12(A)(1) Of The Securities Act

### (Against All Defendants)

53. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

54. This Count is brought pursuant to Sections 5 and 12(a)(1) of the Securities Act, 15 U.S.C. §§ 77e and 77l(a)(1), against all Defendants.

55. The GTV stock and the G Coins marketed by Defendants are both securities within the meaning of Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1).

56. Defendants, and each of them, promoted, offered and/or sold securities through the GTV stock and G Coins offerings.

57. Defendants, and each of them, are issuers, underwriters, and/or necessary participants of/in the GTV offerings.

58. No Defendant or other person filed with the SEC a registration statement for the offer and sale of GTV stock or G Coins through the GTV offerings, no registration statement was in effect at the time of the GTV offerings, and no exemption to the registration requirement was available.

59. Defendants, and each of them, used the instrumentalities of interstate commerce in connection with the offer and sale of GTV securities.

## Count II: Violation Of Section 15 Of The Securities Act

### (Against Defendant Guo)

60. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

61. This Count is asserted against Defendant Guo (the "Control Person Defendant") under Section 15 of the Securities Act, 15 U.S.C. § 77o.

62. The Control Person Defendant, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts was, at the time of the wrongs alleged herein, and as set forth herein, a controlling person within the meaning of Section 15 of the Securities Act.

63. The Control Person Defendant had the power and influence and exercised the same to cause the unlawful offer and sale of GTV securities as described herein. The Control Person Defendant possesses, directly or indirectly, the power to direct or cause the direction of

the management and policies of SMG and GTV, through the ownership of voting securities, by contract, subscription agreement, or otherwise.

64. The Control Person Defendant has sufficient influence to have caused SMG and GTV to submit a registration statement.

65. The Control Person Defendant participated in, and/or aided and abetted, SMG and GTV's failure to register the GTV offering.

66. By virtue of the conduct alleged herein, the Control Person Defendant is liable for the wrongful conduct complained of herein and is liable to Plaintiff for rescission and/or damages suffered.

### Count III: Violation Of Section 15(a) of the Exchange Act

### (Against All Defendants)

67. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

68. Defendants, by engaging in the conduct described above, directly or indirectly, made use of the mails and other means or instrumentalities of interstate commerce to effect transactions in securities, without being registered as a broker or dealer pursuant to Section 15(b) of the Exchange Act, 15 U.S.C. § 78o(b), in violation of Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

### VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

A. Declaring that Defendants offered and sold unregistered securities in violation of the Securities Act of 1933;

B.  Declaring that Defendants operated as broker dealers in the sale of securities without registering in violation of the Exchange Act of 1934;

C.  Awarding Plaintiffs the remedy of recovery of the consideration paid for the securities, together with interest at eight percent per annum from the date of payment, costs, and reasonable attorneys' fees, against all Defendants, jointly and severally; and

D.  Such other and further relief as this Court may deem just and proper.

**VII. JURY DEMAND**

Plaintiffs hereby demand a trial by jury.

    March 28, 2020

    LAW OFFICE OF ARTHUR R. ANGEL

    By: s/Arthur R. Angel
    1305 N. Poinsettia Place
    Los Angeles, CA 90046
    Phone: (323) 656-9085

    [Pro Hac Vice Application filed herewith]

    And

    THE LAW OFFICE OF EUGENE R. SCHEIMAN, PLLC

    By: s/Eugene R. Scheiman
    570 Lexington Ave, Suite 1600
    New York, NY 10022
    Phone: (212) 594-7563

    Attorneys for Plaintiffs