```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
JIANHU YI, et al.,                 :
                                   :
                    Plaintiffs,    :     21 Civ. 2669 (VM)
                                   :
    - against -                    :     DECISION AND ORDER
                                   :
GTV MEDIA GROUP INC., et al.,      :
                                   :
                    Defendants.    :
-----------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: August 6, 2021

**VICTOR MARRERO, United States District Judge.**

Plaintiffs Jianhu Yi ("Yi") and Quiju Jia ("Jia," and with Yi, "Plaintiffs") bring the instant action against GTV Media Group Inc. ("GTV"), Saraca Media Group Inc. ("Saraca"), and Wengui Guo ("Guo," and with GTV and Saraca, "Defendants"). Plaintiffs allege violations of Sections 5 and 12(a)(1) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e, 77l(a)(1) ("Count One"), and Section 15 of the Securities Act, id. § 77o ("Count Two"), stemming from the sale of unregistered securities by an unregistered broker-dealer. (See First Amended Complaint ("FAC"), Dkt. No. 31.)

Now before the Court is a premotion letter submitted by Guo regarding his anticipated motion to dismiss Count Two of the FAC. (See the "July 16 Letter," Dkt. No. 33.) The Court also received a letter response from Plaintiffs (see the "July 21 Letter," Dkt. No. 34). The Court construes Guo's letter as a motion to dismiss Count Two of the FAC pursuant to Rule

1

12(b)(6) of the Federal Rules of Civil Procedure.[1] For the reasons set forth below, the motion is DENIED.

## I. BACKGROUND

A. FACTS[2]

On April 17, 2020, Guo established GTV, a Delaware corporation. Guo envisioned GTV to be a video-streaming social-media platform for user-generated political content. Plaintiffs allege that Guo controls GTV and its parent company, Saraca. Shortly after its founding, Guo, along with GTV and Saraca, began to solicit investors to invest in GTV by purchasing company stock. Defendants also solicited investors to invest in a virtual currency or digital asset called G Coins. The securities were not registered pursuant to the Securities Act, nor were they subject to exemption from registration. None of the Defendants were registered as brokers or dealers under the Exchange Act, nor were they subject to exemption from registration.

---

[1] See Kapitalforeningen Lægernes Invest. v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (affirming the district court ruling deeming an exchange of letters as a motion to dismiss).

[2] The relevant factual background below, except as otherwise noted, derives from the FAC and the facts pleaded therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss. See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 180 (2d Cir. 2008) (citing GICC Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 465 (2d Cir. 1995)); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). Except when specifically quoted, no further citation will be made to the FAC.

Guo began promoting investment in GTV on April 9, 2020 when he posted a video to YouTube in which he "touted GTV as an investment." (FAC ¶ 26.) On April 20, 2020, Guo similarly recorded and disseminated a video on the internet giving instructions to potential "private placement investors" on investing in GTV. (Id. ¶ 28.) In the April 20 video, Guo identified the individuals who would be directors of the company. The next day, Guo posted this video to YouTube. Along with the video, Guo posted a link to download various GTV investment documents, including a subscription agreement. Plaintiffs further contend that between April 11, 2020 and May 9, 2020, Guo made numerous recorded video presentations soliciting investors for the GTV investment, as well as touting G Coin. On May 13, 2020, GNews, a website connected to GTV that is under Guo's control, published an article encouraging investment in GTV. On June 2, 2020, Guo posted a video announcing that by the end of "private placement," he had successfully raised hundreds of millions of dollars. Guo continued to solicit more investors, however, through at least one more video and another written article in June and July of 2020.

The FAC alleges that Guo funded the securities offering and its marketing. It further notes that Guo caused GTV to hire Steve Bannon as a consultant at a pay rate of at least

3

$1,000,000. Guo also instructed potential investors to scan and send investment-related documents directly to him, and to trust and communicate with only him concerning the investment. Guo posted instructions on how to invest and signed his name on these instructions.

Around mid-May 2020, certain of Defendants' bank accounts were blocked from receiving investor funds due to suspicious activity. Defendants, including Guo, began to open other bank accounts under different names and direct investors whose transfers had been previously blocked to transfer funds to these accounts instead. Guo used various vehicles, including fraudulent nonprofits and an entity controlled by him, to take in investments in GTV.

Plaintiffs are a husband and wife. Yi signed a Subscription Agreement for GTV stock in May 2020 after being solicited by Guo. Plaintiffs wired a total of $180,000 to Saraca, which is the parent company of GTV and the designated recipient of investment funds. Plaintiffs also wired Saraca a total of $30,000 for the virtual currency G Coin. Plaintiffs now claim that Defendants are jointly and severally liable for this $210,000, along with 8% interest dating from May 2020, and attorneys' fees.

B.   PROCEDURAL HISTORY

4

Plaintiffs filed the instant suit on March 29, 2021 alleging violations of Sections 5 and 12(a)(1) of the Securities Act; Section 15 of the Securities Act; and Section 15(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78o stemming from the sale of unregistered securities by an unregistered broker-dealer. (See "Complaint," Dkt. No. 5.) On May 18, 2021, Guo filed a letter identifying alleged deficiencies with Plaintiffs' complaint. Plaintiffs filed a response, and Guo filed a reply.

The Court construed Guo's letters as a motion to dismiss under Rule 12(b)(6), which the Court granted in part and denied in part in a Decision and Order dated June 18, 2021. Namely, the Court held that the allegations underlying Guo's liability for violations of Sections 5 and 12(a)(1) of the Securities Act were adequate, but the allegations supporting liability for violations of Section 15 of the Securities Act and Section 15(a) of the Exchange Act were deficient. These latter claims were dismissed without prejudice.

On July 2, 2021, Plaintiffs filed the FAC bringing only Counts One and Two. The present letter exchange regarding dismissal of Count Two followed.

C.  THE PARTIES' ARGUMENTS

Guo argues that Count Two remains deficiently pled because the FAC lacks any factual assertions that Guo

5

controlled GTV or Saraca. Guo is not alleged to be a director or officer of either entity, and while he is alleged to control who becomes a director or officer, Guo contends that this allegation lacks factual support. Nor are there other allegations pertaining to Guo's ownership of either entity or ability to appoint a majority of directors or officers. The other allegations, Guo argues, show that at most he may have aided the defendant-entities.

Plaintiffs argue that Count Two has been sufficiently alleged. Plaintiffs note that there are numerous allegations supporting a finding of control, including that Guo conceived of GTV, funded the securities offering, and controlled who would be designated as directors and officers and how those directors and officers would exercise their authority. Plaintiffs also contend that because control-person liability is a fact-intensive inquiry, its resolution is inappropriate at the motion-to-dismiss stage.

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to

6

draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible. See id. However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

In resolving a Rule 12(b)(6) motion, the Court's task is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks omitted), aff'd sub nom. Tenney v. Credit Suisse First Bos. Corp., No. 05 Civ. 3430, 2006 WL 1423785 (2d Cir. May 19, 2006). In this context, the Court must draw reasonable inferences in favor of the nonmoving party. See Chambers v. TimeWarner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, the requirement that a court accept the factual allegations in the complaint as true does not extend to legal conclusions. See Iqbal, 556 U.S. at 678.

### III. DISCUSSION

Section 15(a) of the Securities Act provides than an individual "who controls any person liable under [§ 12 of the

7

Act] shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable." 15 U.S.C. § 77o(a). "In order to state a claim for control person liability under Section 15 of the Securities Act, a plaintiff must allege (a) a primary violation by a controlled person, and (b) control by the defendant of the primary violator." In re Scottish Re Grp. Sec. Litig., 524 F. Supp. 2d 370, 287 (S.D.N.Y. 2007) (internal quotation marks omitted). Control for purposes of Section 15(a) is defined as "the power to direct or cause the direction of the management and policies of the primary violators, whether through the ownership of voting securities, by contract, or otherwise." In re Lehman Bros. Mortg.-Backed Sec. Litig., 650 F.3d 167, 185 (2d Cir. 2011) (internal quotation marks omitted). "In order to survive a Rule 12(b)(6) motion, a plaintiff must plead facts which support a reasonable inference that they had the potential power to influence and direct the activities of the primary violator." In re Deutsche Telekom AG Sec. Litig., No. 00 Civ. 9475, 2002 WL 244597, at *7 (S.D.N.Y. Feb. 20, 2002) (internal quotation marks and citation omitted).

  The Court is persuaded that the FAC's allegations are sufficient to "support a reasonable inference that [Guo] had the potential power to influence and direct the activities of

the primary violator." Id. Plaintiffs have alleged that Guo conceived of GTV and caused its incorporation. Although Guo's status as a founder of GTV does not necessarily establish an ability to control GTV, there are other facts that render an inference of control plausible in conjunction with Guo's status as founder. For instance, Guo caused Bannon to be hired as a consultant and paid $1,000,000 for his services, a fact that suggests Guo exercised at least some control over the day-to-day operations of GTV. Ability to influence an entity's hiring decision of such financial magnitude supports a plausible inference that the person exercises control over that entity's business affairs. In addition, Guo paid for the securities offering, provided instructions and investment documents to potential investors, and set up other entities and bank accounts to receive investments in GTV. These allegations, when taken together, give rise to a plausible inference that Guo had the power to direct or cause the direction of the management and policies of the primary violators.

Guo argues that "these allegations suggest, at most, that Mr. Guo may have had some influence over the defendant entities, or that he 'aided the defendant entities' and 'participated in violation of securities laws' -- not that he controlled them, which is insufficient as a matter of law."

9

(July 16 Letter at 3.) It is true that these allegations are equally consistent with a finding that Guo engaged in this conduct at the direction of GTV rather than the other way around. Presented with two equally plausible alternatives at the motion-to-dismiss stage, however, the Court must draw all reasonable inferences in Plaintiffs' favor. See, e.g., Chambers, 282 F.3d at 152; see also Merryman v. J.P. Morgan Chase Bank, N.A., No. 15 Civ. 9188, 2016 WL 5477776, at *9 (S.D.N.Y. Sept. 29, 2016) (denying a motion to dismiss in part because "the Court cannot pick between equally plausible scenarios when deciding a motion to dismiss."). And when doing so, the allegations cumulatively make plausible the conclusion that Guo had the power to influence and direct the activities of the primary violators.

## IV. ORDER

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the motion so deemed by the Court as filed by defendant Wengui Guo to dismiss Count Two pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 33) is **DENIED**.

**SO ORDERED.**

Dated:   New York, New York
         6 August 2021

_____
Victor Marrero
U.S.D.J.